IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01696-MEH

JAMES KENNEDY COVINGTON,

     Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

     Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

     Plaintiff, James K. Covington, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and his application for supplemental security income benefits ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83c. I hold the ALJ erred in assigning too little weight to Mr. Covington's treating physician's opinion. I reverse the decision of the ALJ and remand this case to the Commissioner for further proceedings.

## BACKGROUND

### I.    Mr. Covington's Conditions

     Mr. Covington was born on December 21, 1961; he was fifty-four years old when he filed his application for DIB and SSI. [AR 127]. Mr. Covington claims he became disabled on November 22, 2015 due to physical impairments. [*Id.*]

On December 29, 2014, Mr. Covington saw Dr. David Cohn for a follow-up and repeat urinary tox screen. [AR 261]. The medical report stated that Mr. Covington is a "well-developed male in no apparent distress. He is alert and conversant." [*Id.*] The report noted that Mr. Covington was diagnosed with HIV in 2001. [*Id.*] Dr. Cohn stated that Mr. Covington tolerated his HIV medications well and reported excellent adherence. [*Id.*]

On April 20, 2015, Mr. Covington visited Dr. Mark W. Thrun for an HIV follow-up. [AR 235]. The medical report stated that Mr. Covington tolerated his medications well and reported excellent adherence. [*Id.*] Dr. Thrun also indicated that Mr. Covington had a history of chronic pain in his knees and his lower back, and his symptoms have recently worsened. [*Id.*] The doctor stated the pain likely resulted from injuries sustained while Mr. Covington was in military service. [*Id.*] Mr. Covington denied any radiculopathy, weakness, imbalance, or falls. [*Id.*] However, he noted that his current job requires heavy lifting and strenuous activity, which makes it very difficult for him to perform his duties effectively. [*Id.*] The report stated that Mr. Covington had "Cranial nerves II-XII grossly intact. Strength 5/5 bilaterally. . . . No pronator drift. Rapid movements intact. Steady gait and balance observed." [AR 236].

On August 18, 2015, Mr. Covington visited Dr. Margaret McLees for another HIV follow-up. [AR 224]. Dr. McLees stated that Mr. Covington had excellent adherence and tolerated his medications well. [*Id.*] Mr. Covington was using medication for chronic ongoing back pain, shoulder pain, and paresthesia. [*Id.*] Mr. Covington informed Dr. McLees that he was working at a retirement community, and it was going well. [*Id.*] Dr. McLees concluded that Mr. Covington was a well-developed male in no apparent distress. [*Id.*]

On November 4, 2015, Mr. Covington had another appointment with Dr. McLees. [AR

213]. Mr. Covington said he has had "right flank pain" for the last three days. He denied any acute event, and he stated his symptoms were gradually improving. [*Id.*]

On November 22, 2015, Mr. Covington visited the Lutheran Medical Center due to wrist and back pain that resulted from attempting to catch a patient at work. [AR 424]. Dr. Phillippe Andre Tirman performed an x-ray on Mr. Covington and found no definite fracture identified in the wrist, but degenerative changes in the carpus. [*Id.*]

On December 4, 2015, Mr. Covington visited Front Range Occupational Medicine for his ongoing back and wrist pain. [AR 288]. Mr. Covington rated his pain at four on a one-to-ten scale. [*Id.*] Dr. Matt Miller found Mr. Covington sprained his lumbar spine ligaments, and he recommended physical therapy and a twenty pound lifting restriction. [AR 290]. Dr. Miller anticipated that Mr. Covington would recover within one to two weeks and should be back to full duty for work. [*Id.*]

On December 8, 2015, Mr. Covington visited Belmar Physical Therapy. [AR 292]. The physical therapy records indicate that Mr. Covington was thirty-six percent disabled because of lower back pain. [*Id.*] However, Mr. Covington's physical therapist anticipated he would return to work in four weeks. [*Id.*]

Mr. Covington visited Concentra Medical Centers on December 9, 2015. [AR 369]. Mr. Covington complained about central lower back pain and numbness in his thighs, but he stated that those issues were improving. [AR 378]. Dr. Chelsea R. Rasis diagnosed Mr. Covington with a lumbar spine ligament sprain. [*Id.*] The report indicated that Mr. Covington could return to work immediately with the following restrictions: no bending greater than five times per hour, may lift up to fifteen pounds frequently up to six hours per day, and may push/pull up to fifteen

pounds frequently up to six hours per day. [*Id.*] On the same day, Mr. Covington also visited Dr. Kathleen E. Voss for a therapy appointment due to his left wrist sprain. [AR 372]. Dr. Voss recommended Mr. Covington return to modified work. [*Id.*]

On December 11, 2015, Mr. Covington began seeing Dr. Angela J. Wilt at Concentra Medical Center for physical therapy. [AR 371]. Mr. Covington reported that he was able to walk without pain after e-stimulation on December 10, 2015. [*Id.*] However, Mr. Covington reported that he reinjured his back at work when trying to catch a resident falling out of her wheelchair. [*Id.*] Mr. Covington stated that he mostly recovered from this, but his back was still sore. [*Id.*] Dr. Wilt recommended he return to modified work. [*Id.*]

During his next two months of physical therapy, Mr. Covington reported that his back was close to 100% improved, but he had a constant pain in his left back. [AR 388]. The pain increased when lifting heavy objects. [*Id.*] The medical report stated that Mr. Covington had increased pain after siting for five minutes. [AR 389]. During a later visit with Dr. Wilt, Mr. Covington stated his back felt tight, especially after work while lifting or transferring residents. [AR 406]. Mr. Covington had been working at his regular job, but he took off work from December 7, 2015 to December 29, 2015, because pain was worsening. [AR 410]. Dr. Wilt restricted Mr. Covington to lifting up to fifteen pounds frequently, pushing or pulling up to fifteen pounds frequently, and bending only five times per hour. [AR 406]. Mr. Covington was able to increase his lifting restriction to fifty pounds on January 19, 2016. [AR 350].

On March 16, 2016, Mr. Covington reported to Dr. Stephen Danahey that his wrist was healed. [AR 335]. Dr. Danahey reported that Mr. Covington could return to full work with no restrictions. [AR 336].

On March 24, 2016, Mr. Covington visited the Denver Health Medical Center complaining about ongoing dizziness that impaired his work performance. [AR 198]. He also reported that his chronic neck and back pain was interfering with his ability to lift and do his job properly. [*Id.*]

On March 31, 2016, Mr. Covington began seeing Dr. Fredric Zimmerman. [AR 448]. The report indicated that past oral medications and physical therapy provided some moderate-to-good relief for his lower back pain. [*Id.*] However, his symptoms returned once he began working. [*Id.*] He reported constant lower back pain across the lumbosacral region, and he had sensations of "pins and needles." [*Id.*] Dr. Zimmerman recorded that Mr. Covington was unable to work without restrictions at that time. [AR 449].

Dr. Zimmerman referred Mr. Covington to Dr. Steve Brown to perform an MRI. [AR 42]. Although the MRI revealed no acute intracranial abnormality, it showed a "marked narrowing of the L5-S1 disc space which may be related to facet joint arthroplasty." [AR 196].

On April 15, 2016, Mr. Covington saw Dr. Benjamin J. Chambers at Denver Health Medical Center. [AR 188]. Mr. Covington reported that his daily episodic dizziness had become more frequent and consistent. [*Id.*] He denied having any major AIDS crises, and he had been adherent to his HIV medicine regimens. [AR 189]. Dr. Chambers reviewed Mr. Covington's x-ray and MRI images of the lumbar spine. [AR 191]. He concluded that Mr. Covington had right leg radicular symptoms. [*Id.*] Additionally, Mr. Covington's MRI and x-ray were abnormal at the level of L5-S1. [AR 192]. Dr. Chambers indicated that Mr. Covington had normal bulk and tone symmetrically in the upper and lower extremities. [AR 190] He had "5/5 strength in upper and lower extremities throughout." [*Id.*]

On May 2, 2016, Mr. Covington returned to the Concentra Medical Centers for a work activity status report. [AR 329]. His physician noted the following additional work restrictions: may lift up to five pounds occasionally up to three hours per day; may push/pull up to five pounds occasionally up to three hours per day; may bend occasionally up to three hours per day. [*Id.*]

On May 5, 2016, Mr. Covington revisited Dr. Zimmerman. [AR 327]. Dr. Zimmerman indicated that Mr. Covington's symptoms did not improve and might be mildly worse. [*Id.*] Further, his lower back symptoms began to interfere with activities of daily living. [*Id.*] Dr. Zimmerman's physical examination revealed that Mr. Covington was uncomfortable in the seated position and struggled to go from a seated to standing position. [*Id.*]

On June 15, 2016, Mr. Covington reported a pain score at rest of five out of ten to Dr. Zimmerman. [AR 446]. His lumber range of motion showed he was able to reach down just above his kneecaps. [*Id.*] Although his pain increased to six to seven out of ten when extending, his pain decreased significantly after Dr. Zimmerman performed bilateral L5-S1 transformational epidural steroid injections. [AR 446–47].

On July 7, 2016, Mr. Covington revisited Dr. Zimmerman and reported seventy percent relief immediately after the steroid injection, but the relief had diminished. [AR 441]. Dr. Zimmerman determined that Mr. Covington could not work, in part because he was stiff and slow when transitioning from sitting to standing. [*Id.*] Dr. Zimmerman scheduled Mr. Covington to continue physical therapy for lumbar range of motion. [AR 442].

On July 19, 2016, Mr. Covington visited Dr. John Burris and reported lower back pain of four out of ten. [AR 313]. Dr. Burris increased his work capacity to "no lifting greater than 30

pounds." [*Id.*]

On July 21, 2016, Mr. Covington completed a Function Report in connection with his disability application. [AR 156]. Mr. Covington stated that he could not lift over fifty pounds, he could not stand for long periods of time, he could not sit or walk without medication, and his medication made him sleepy. [*Id.*] Further, he wrote that bending was difficult for him. [*Id.*] Regarding his activities of daily living, he stated that he prepared sandwiches, made frozen dinner for himself, cleaned his house, did laundry, and cooked daily. [AR 157].

On September 1, 2016, Mr. Covington reported to Dr. Zimmerman that he returned to part-time work. [AR 306]. He worked two to three hour shifts with limited lifting. [*Id.*] He continued doing physical therapy and taking his medication. [AR 428].

On September 23, 2016, Dr. Steven Ross performed a lumber spine x-ray on Mr. Covington. The x-ray revealed "grade 1 retrolisthesis of L5 on S1 with moderate degenerative disc disease and facet osteoarthrosis. . . . [His] disc space heights were relative well-preserved." [AR 281].

On the same day, Dr. Ryan Parsons performed a disability examination on Mr. Covington. [AR 282]. After a physical examination, Dr. Parsons found that Mr. Covington's back had normal alignment, but he had a herniated disc. [AR 256, 282]. Additionally, his gait was normal straightaway and on toes. [AR 256]. Dr. Parsons concluded that Mr. Covington may stand or walk for one hour at a time and up to six hours per day due to his back issues. [AR 287]. Dr. Parsons found that Mr. Covington may occasionally lift and carry forty pounds and may frequently lift and carry twenty pounds. [*Id.*] He also found that Mr. Covington may sit for two hours at a time and up to six hours per day, and that he may stoop, knee, crouch, and crawl

occasionally.  [*Id*.]

On October 5, 2016, Dr. Zimmerman performed another steroid injection on Mr. Covington.  [AR 425].  After the injection, Mr. Covington's pain decreased, and his extension slightly improved.  [AR 426].  His straight leg raise changed from positive to negative.  [*Id*.]

On November 1, 2016, Mr. Covington revisited Dr. Zimmerman and complained of intermittent lower back pain, described as "burning" across the lumbosacral region when in a prolonged standing or sitting position.  [AR 298].  He reported working with restrictions approximately two hours per day, and Dr. Zimmerman stated that he does so in a primarily seated position.  [*Id*.]

## II.    Procedural History

Mr. Covington asserts he first became disabled on November 22, 2015.  [AR 127].  On September 9, 2016, the SSA initially denied Mr. Covington's application for DIB and SSI.  [AR 68–76].  Mr. Covington subsequently requested a hearing before an ALJ, which took place on October 1, 2016.  [AR 77].  On January 23, 2017, the ALJ issued an opinion holding that Mr. Covington is not disabled.  [AR 12–27].  According to the ALJ, although Mr. Covington has severe impairments, they do not meet the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [AR 19–20].  Then, the ALJ held that, despite Mr. Covington's limitations, he is capable of performing his past work as a recreational and sporting goods sales supervisor as that job is generally performed in the national economy.  [AR 20–26].

The SSA Appeals Council subsequently denied Mr. Covington's request for review, making the SSA Commissioner's denial final for the purpose of judicial review.  *See* [AR 5–9]; *see* 20 C.F.R. § 416.1481 ("The Appeals Council's decision, or the decision of the administrative

law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.").  Mr. Covington timely appealed the ALJ/Commissioner's final decision to this Court.  Compl., ECF No. 1.

## III.    Hearing Testimony

The ALJ held a hearing regarding Mr. Covington's application on January 3, 2017.  [AR 31–53].  Mr. Covington and a vocational expert testified at the hearing.  [AR 31].  Mr. Covington stated that he was working two hours per day and five days per week at Alison Care Center.  [AR 37].  He was earning four hundred dollars every month.  [AR 39].  He testified that he could not return to his previous working hours because of his back injury.  [AR 42].

Mr. Covington testified that after working from 8:00 a.m. to 10:00 a.m., he had to go home because of increasing pain from sitting and working.  [AR 38].  He stated that his job required occasionally turning people in bed, changing their clothes, and cleaning them after a bath.  [*Id*.]  Mr. Covington could not fulfill those duties, because they required bending, twisting, and turning.  [AR 39].

Before joining the medical profession, Mr. Covington testified that he worked as a lead sales associate for three years for Guard Brothers Sporting Goods.  [AR 35].  His duties included unloading trucks, guiding people, and taking care of customers.  [*Id*.]  Mr. Covington testified that he had to lift fifty to one hundred pounds when unloading the trucks.  [AR 42].

Based on Dr. Parsons' medical opinion, the ALJ asked whether Mr. Covington can occasionally lift forty pounds and frequently lift twenty pounds.  [AR 41].  Mr. Covington responded that he could only occasionally lift twenty or thirty pounds.  [*Id*.]

When the ALJ asked Mr. Covington about his current pain, he testified that pain starts if

he sits for more than forty-five minutes. [AR 44]. He stated that the steroid shots were not a paramount solution, because pain would return the next week. [AR 46].

The ALJ then questioned the vocational expert. [AR 46–49]. The ALJ asked if a hypothetical individual similar to Mr. Covington would be able to perform his past jobs if he could take a one to three minute break from sitting or standing at his discretion. [AR 47–48]. The vocational expert first testified that Mr. Covington would not be able to work as a nurse aide, because nurse aides cannot take breaks at their discretion. [AR 48]. Applying the same reasoning, Mr. Covington would not be able to work as a certified medical technician or a sales representative. [AR 48–49]. However, the vocational expert opined that Mr. Covington would be able to work as a sales supervisor, because sales supervisors have more latitude to take breaks for a few minutes. [AR 49].

Finally, Mr. Covington's attorney questioned the vocational expert and imposed additional restrictions on the hypothetical. [AR 49–53]. The vocational expert testified that an individual could not perform the duties of a sales supervisor if he were limited to lifting no more than twenty pounds, had to take a ten to fifteen minute break to lie down or ambulate, or had lapses in memory in which he forgets twenty percent of his workload. [AR 49–50].

The ALJ issued an unfavorable decision on January 23, 2017. [AR 17–27].

## LEGAL STANDARDS

### I.    SSA's Five-Step Process for Determining Disability

I first review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step one determines whether the claimant is presently engaged in substantial gainful activity. If he is, he is not disabled. *See* 20 C.F.R. § 404.1520. Step two analyzes whether the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. *See id.* Step three analyzes whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the claimant's impairment is listed or is equivalent to a listed impairment, he is presumed to be disabled. If the impairment does not satisfy step three, the ALJ must proceed to step four, which requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is capable of performing his previous work, either as he performed it or as it is generally performed in the national economy, he is not disabled. *See* 20 C.F.R. § 404.1520(e), (f); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) ("[C]laimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy."). However, if the claimant establishes a prima facie case of disability based on the previous four steps, the analysis proceeds to step five, where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other

work in the national economy in view of his age, education, and work experience. *See* 20 C.F.R. § 404.1520(g).

## II. Standard of Review

My review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the ALJ applied the correct legal standards. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). I may not re-weigh the evidence nor substitute my judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## THE ALJ'S RULING

The ALJ first ruled that Mr. Covington met the insured status requirements of the Social Security Act. [AR 19]. Next, the ALJ determined that Mr. Covington has not engaged in substantial gainful employment since November 22, 2015, which is the alleged onset date. [*Id.*]

At step two, the ALJ held that Mr. Covington has the following severe impairments: degenerative disc disease of the lumbar spine and HIV seropositivity on long-term antiretroviral therapy. [AR 19].

Moving to step three, the ALJ found Mr. Covington's impairments or combination of impairments do not medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 20]. When analyzing Mr. Covington's lumbar spine degenerative disc disease, the ALJ found the medical record did not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under Listing 1.04. [*Id*.] The ALJ also concluded there was no evidence that Mr. Covington's back disorder has resulted in an inability to ambulate effectively. [*Id*.] For his HIV infection, Mr. Covington did not meet the requirements of Listing 14.08. [*Id*.] The ALJ also concluded that Mr. Covington's HIV seropositivity did not meet or equal Listing 14.11, because no medical evidence supports a finding that Mr. Covington has one of the nine possible manifestations of listing level HIV infections. [*Id*.]

At step four, the ALJ held that Mr. Covington has an RFC to perform light work. [AR 22]. The ALJ limited Mr. Covington to lifting and carrying twenty pounds occasionally and ten pounds frequently; standing for a total of six hours; and occasionally stooping, kneeling, crouching, and crawling. [*Id.*] In making his determinations, the ALJ relied on Mr. Covington's physical examination, imaging, history of medical treatment, daily activities, and personal pain questionnaire. [AR 22–23]. According to the ALJ, although Mr. Covington's impairments could reasonably be expected to cause some of his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the

13

medical record.  [AR 21].

The ALJ then discussed how the various medical opinions affect the RFC determination. [AR 24].  The ALJ first gave little weight to Dr. Zimmerman's opinion.  [*Id.*]  According to the ALJ, Dr. Zimmerman's restriction that Mr. Covington could work only two hours per day primarily in a seated position was inconsistent with objective physical examinations and imaging of Mr. Covington.  [*Id.*]  The ALJ cited many documents in the record that purported to support this finding.  [*Id.*]  Further, the ALJ stated Dr. Zimmerman's opinion was inconsistent with Mr. Covington's own testimony.  [*Id.*]

Next, the ALJ gave some weight to Dr. Parsons' opinion.  [*Id.*]  Dr. Parsons opined that Mr. Covington could lift and carry forty pounds occasionally and twenty pounds frequently.  [*Id.*]  He could sit for two hours at a time and up to six hours per work day.  [*Id.*]  According to the ALJ, these opinions were mostly consistent with the objective medical record as a whole.  [*Id.*]  The ALJ did not give controlling weight to Dr. Parsons' opinions, because the objective physical examinations and imaging of Mr. Covington demonstrated that he was more limited in his ability to lift and carry weight, and less limited in his ability to stand and walk.  [AR 25].  The ALJ gave little weight to the opinions of Dr. Burris, Dr. Rasis, and Dr. Miller.  [*Id.*]

Lastly, the ALJ found Mr. Covington was capable of completing the duties of a recreational and sporting goods sales representative as that position is generally performed in the national economy.  [AR 26].  The position requires only a "light" exertional level.  [*Id.*]  Importantly, the ALJ relied on the vocational expert's testimony that a hypothetical individual similar to Mr. Covington could perform the duties of his prior position.  [*Id.*]

## ISSUES ON APPEAL

On appeal, Mr. Covington alleges the following errors by the Commissioner: (1) assigning little weight to Dr. Zimmerman's opinion; (2) finding that Mr. Covington's impairments do not equal or exceed Listing 1.04; and (3) concluding that Mr. Covington can perform his past relevant work as generally performed in the national economy. Opening Br., ECF No. 25.

## ANALYSIS

### I.     The ALJ's Discussion of Dr. Zimmerman's Opinion

Mr. Covington first argues the ALJ erred when he gave little weight to Dr. Zimmerman's opinion statement.[1]  [*Id.*]  Specifically, Mr. Covington asserts the ALJ did not properly address the factors listed in 20 CFR 404.1527(c).  Defendant contends the ALJ sufficiently supported his determination to apply little weight to Dr. Zimmerman's opinion by citing to inconsistent evidence in the record.   Resp. Br. 7–11, ECF No. 26.   I agree with Mr. Covington.

The treating physician rule generally requires that the Commissioner "give more weight to medical opinions from treating sources than those from non-treating sources."[2]  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2014); *see also* 20 C.F.R. § 404.1527(c)(2).   When determining how much weight to give an opinion from a treating source, the ALJ must complete

---

[1] The medical record the ALJ cited as Dr. Zimmerman's opinion stated, "He is working with restrictions approximate[ly] 2 hours per day, primarily in a seated position."  [AR 298].   It is not clear that this is Dr. Zimmerman's opinion. Instead, it appears to be a report of Mr. Covington's current status. However, because the ALJ and the Commissioner considered this as Dr. Zimmerman's opinion, I will review it as such.  Further, Dr. Zimmerman expressed his opinion in another medical record when he stated, "The patient is unable to work and has not worked in the last six months."  [AR 441].

[2] Because Mr. Covington filed his application prior to March 27, 2017, the ALJ was required to apply the treating physician rule.  *See* 20 C.F.R. § 404.1527 (2017).

a two-step inquiry, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must determine whether the treating physician has offered a conclusive opinion; that is, whether it is to be accorded controlling weight on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at 1330. To do so, the ALJ:

> must consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. . . [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (applying Social Security Ruling 96-2p, 1996 WL 374188, at *2) (internal quotation marks and citations omitted); *accord Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014); *see also* 20 C.F.R. § 404.1527(c)(2).

If the opinion of the treating physician is not entitled to controlling weight, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. This is because, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F.3d at 1300.

The factors the ALJ must consider are:

> (1) The length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331. Without a discussion of these factors, remand is required. *Watkins*,

350 F.3d at 1300–01; *accord Krauser*, 638 F.3d 1330. However, the ALJ is not required to

specifically analyze all six factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

> In addressing Dr. Zimmerman's opinion, the ALJ wrote:
>
> In November 2016, Fredric Zimmerman, D.O., opined the claimant could not work more than two hours per day and must do so primarily in a seated position. (Ex. 5F, pg. 5). The undersigned gives little weight to the opinions of Dr. Zimmerman, as they are inconsistent with the objective medical record as a whole. Specifically, the objective physical examinations and imaging of the claimant that, as discussed above, indicated the claimant was not [as] limited as he opined. (Exs. 1F, pgs. 8-9, 17, 32-33; 2F; 3F; 5F, pg. 40; 6F). Further, the undersigned gives little weight to the opinions of Dr. Zimmerman, as they are inconsistent with the claimant's own testimony.

[AR 24]. The ALJ impliedly rejected Dr. Zimmerman's opinion as controlling weight by stating

that it was inconsistent with the objective medical record as a whole. [AR 24]. However, the ALJ

did not explain how the cited records are inconsistent with Dr. Zimmerman's opinion. Without

specific and legitimate reasons for the ALJ's decision, I cannot meaningfully review his findings.

*See Arellano v. Astrue*, No. 11–cv–00752–RBJ, 2013 WL 1129479, at *5 (D. Colo. Mar. 18,

2013) (reversing and remanding the ALJ's opinion, because "[t]he ALJ fails to explain how the

medical evidence she listed is contradictory to Dr. Budnick's opinion, beyond her own lay

opinion that the results are 'benign.'"); *see also Parker v. Berryhill*, No. 16–cv–2378–WJM,

2017 WL 3315625, at *4 n.7 (D. Colo. Aug. 3, 2017) ("In determining whether the individual's

symptoms and related limitations are consistent with the evidence in his or her record, the ALJs

must explain which symptoms they found consistent or inconsistent and explain how their

evaluation of the individual's symptoms led to their conclusion.")

Although the ALJ cited to seven different records, he did not explain how the cited records were inconsistent with Dr. Zimmerman's opinion. After a careful review of the cited records, I found only one document to be arguably inconsistent with Dr. Zimmerman's statements. On December 4, 2015, Dr. Miller opined that Mr. Covington would recover with one to two weeks of therapy and then should be back to full duty. [AR 288]. However, this was six months before Mr. Covington filled his application for disability benefits, and the ALJ does not explain any intervening evidence. [AR 127]. The consistency of the other cited records is not readily apparent, and the ALJ did not explain how they are inconsistent. For example, in Exhibit NO. 1F, page 8–9, Dr. Chambers noted that Mr. Covington had normal bulk and tone symmetrically in the upper and lower extremities. [AR 190]. Mr. Covington had "5/5 strength in upper and lower extremities throughout." [*Id.*] Without more, I cannot determine whether this is inconsistent with Dr. Zimmerman's opinion. *See Romo v. Colvin*, 83 F. Supp. 3d 1116, 1121 (D. Colo. 2015) ("The ALJ's apparent conclusion that findings of normal strength, sensation, and reflexes were inconsistent with the limitations Dr. Leppard suggested is hardly obvious, and certainly not one that the ALJ (or this court, for that matter) is qualified to make.")

The ALJ also concluded Mr. Covington's own testimony was inconsistent with Dr. Zimmerman's opinion. [AR 288]. Although the ALJ did not further detail this finding, the ALJ stated earlier in his opinion that Mr. Covington did not have any trouble personally caring for himself. [AR 24]. In *Romo*, the court stated that "the ability to engage in limited household and other activities of daily living does not equate to the ability to perform substantial gainful activity on a regular work schedule." 83 F. Supp. 3d at 1121. Similarly, although Mr. Covington stated he prepared sandwiches, made frozen dinners, did laundry, and cooked daily, it is not obvious,

without additional explanation, that these activities are inconsistent with Dr. Zimmerman's work limitations. *See Twarog v. Astrue*, No. 07–cv–01903–REB, 2009 WL 77476, at *4 (D. Colo. Jan. 9, 2009) ("[T]o the somewhat limited extent that a plaintiff's activities of daily living correlate to the ability to sustain competitive employment, the ALJ's largely global reference to such activities is unilluminating at best." (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir.1984))).

Additionally, even if the ALJ had explained the inconsistencies in determining not to afford controlling weight, he did not sufficiently analyze the required factors in giving little weight to Dr. Zimmerman's opinion. While the ALJ is not required to expressly discuss all six factors, all factors must be considered, and the decision must articulate "good reasons" for the weight that is ultimately assigned. 20 C.F.R. § 404.1527. Further, "the existence of multiple factors in the regulations indicates that a treating physician's opinion should not be severely discounted based upon one factor alone." *Whitten v. Astrue*, No. 12–cv–0601–WJM, 2013 WL 1461543, at *4 (D. Colo. Apr. 11, 2013). Here, the ALJ considered only one or possibly two factors by stating that the cited record was inconsistent with Dr. Zimmerman's opinion. Moreover, as discussed above, the ALJ did not sufficiently explain any inconsistencies. Therefore, the ALJ did not sufficiently consider all six factors or give "good reasons" for the weight that was ultimately assigned to Dr. Zimmerman's opinion. As such, the ALJ failed to comply with the treating physician rule.

## II.     Remaining Issues

Mr. Covington further contends the ALJ's finding that his severe impairment did not meet Listing 1.04 was not supported by substantial evidence. Pl's Opening Br. 8-11, ECF No.

25.  Also, Mr. Covington argues the ALJ erred in finding that Mr. Covington could return to his past work.  *Id.*  at 11–13.  However, I "address only so much of Plaintiff's arguments as are sufficient to require reversal."  *See Cross v. Colvin*, 25 F. Supp. 3d 1345, 1348 n.1 (D. Colo. 2014).  Furthermore, without the ALJ's revised analysis on the proper weight to give Dr. Zimmerman's opinion, my discussion of the remaining contentions of error would be incomplete and premature. According, I will not express any opinion as to Mr. Covington's remaining arguments, and neither party should take my silence as implied approval or disapproval of the arguments.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2015) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand.").  I also do not suggest a result that should be reached on remand; rather, I encourage the parties, the ALJ, and the Commissioner on remand to consider fully and anew the evidence and all issues raised.  *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand 'simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.'" (quoting *Huston v. Bowen*, 838 F. 2d 1125, 1132 (10th Cir. 1988))).

## CONCLUSION

The ALJ erred in determining that Mr. Covington was not disabled from November 22, 2015 through the date of his decision. Specifically, the ALJ did not sufficiently explain the reasons for the weight he assigned to Dr. Zimmerman's opinion. The ALJ cited to the record without an explanation for his conclusion, and he considered only one or two of the six factors when assigning the opinion little weight. Accordingly, the decision that Mr. Covington was not disabled is **reversed and remanded** to the Commissioner for further consideration and/or

clarification in accordance with this order.

Dated and entered at Denver, Colorado this 2nd day of July, 2018.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge